In re Richard E. GIESBRECHT, Jr.; Joanne P. Giesbrecht, Debtors.

Richard E. Giesbrecht, Jr.; Joanne P. Giesbrecht, Appellants,

v.

K. Michael Fitzgerald, Chapter 13 Trustee, Appellee.

BAP No. WW–09–1301–HMoMk. Bankruptcy No. 09–12491–TTG.

United States Bankruptcy Appellate Panel for the Ninth Circuit.

Argued and Submitted Feb. 19, 2010.

Filed April 28, 2010.

Cawood King Bebout, Mount Vernon, WA, for Appellants.

Jason T. Wilson–Aguilar, Seattle, WA, for Appellee.

Before HOLLOWELL, MONTALI and MARKELL, Bankruptcy Judges.

## OPINION

HOLLOWELL, Bankruptcy Judge.

In this appeal we are asked to determine whether *Cohen v. Lopez (In re Lopez)*, 372 B.R. 40 (9th Cir. BAP 2007), *aff'd*, and *adopted by Cohen v. Lopez (In re Lopez)*, 550 F.3d 1202 (9th Cir.2008) *(Lopez)*[1] allows a debtor the absolute right to pay an unimpaired[2] claim directly to

---

**1.** Because the Ninth Circuit adopted verbatim the analysis set forth in the BAP decision, all citations to *Lopez* are to the BAP case.

**2.** We use the term "unimpaired" in this case because the claim being paid directly to the

creditor was not in default at the petition date and there was no alteration or modification of treatment of the claim by the debtors' chapter 13 plan. Accordingly, there was no impairment, even under the Ninth Circuit's very broad definition of impairment. *See, L & J*

the creditor if the plan is otherwise confirmable. We find that a debtor has no absolute right to make such payments but that, in this case, the bankruptcy court erred when it failed to articulate clear standards regarding when it is permissible to pay a creditor directly. Accordingly, we REVERSE.

## I. FACTS

Richard and Joanne Giesbrecht (the Debtors) filed a chapter 13 [3] bankruptcy petition on March 18, 2009. On that date and thereafter, the Debtors were current on the loan from Whidbey Island Bank (the Bank), secured by their 2006 Honda. The Debtors filed a chapter 13 plan on April 2, 2009, which proposed to continue to pay the Bank direct monthly payments, under the same terms, of $331.01.[4] The plan also proposed to pay the other creditors semi-monthly payments of disposable income to the chapter 13 trustee (the Trustee) in the amount of $175.00 for thirty-six months and $240.21 for the next twenty-four months.

On April 24, 2009, the Trustee objected to plan confirmation because of the proposed direct payments to the Bank. The Trustee contended that the car payments had to be paid through the plan in order to comply with § 1322(a)(1). Additionally, the Trustee asserted it was the general local practice that all payments be made through the plan in order for the Trustee to monitor payments and provide accurate independent accounting.

The Debtors filed a response contending that nothing in §§ 1322 or 1326 required all debts be paid through the plan. Additionally, the Debtors contended *Lopez* permits direct payments of unimpaired claims.

A hearing on plan confirmation took place on June 10, 2009. At the close of the hearing, the bankruptcy court denied the confirmation of the Debtors' plan because the car payments were not made to the Trustee. An Order Denying Confirmation of Plan (Order Denying Confirmation) was entered on June 12, 2009.

The Debtors amended their chapter 13 plan on June 24, 2009. The amended plan proposed to pay the car loan through the plan, lowered the interest rate on the car loan from 6.99% to 3.25% and the monthly payments to the Trustee from $330.01 to $322.00. Additionally, the Debtors changed the plan payments to $175.00 for two months, then semi-monthly payments of $289.31 for thirty-four months, and $240.21 for the next twenty-four months.

The amended plan was confirmed by order entered on September 2, 2009 (the Confirmation Order). The Debtors filed a notice of appeal on September 10, 2009, appealing the Order Denying Confirmation and the Confirmation Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157. We address below our jurisdiction over the appeal under 28 U.S.C. § 158.

---

*Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc., (In re L & J Anaheim Assocs.),* 995 F.2d 940, 942 (9th Cir.1993).

**3.** Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

**4.** Whidbey Island Bank filed a proof of claim on April 13, 2009, asserting a secured claim for an automobile loan in the amount of $10,263.49 with an annual interest rate of 6.99%.

## III. ISSUE

(A) Does the Panel have jurisdiction over the appeal?

(B) Did the bankruptcy court err in denying confirmation of the Debtors' original chapter 13 plan solely on the basis that the plan provided for the direct payment of the Debtors' unimpaired car loan?

## IV. STANDARDS OF REVIEW

■ We review issues of law de novo and findings of fact for clear error. *Shook v. CBIC (In re Shook)*, 278 B.R. 815, 820 (9th Cir.BAP2002). We review chapter 13 plan confirmation issues requiring statutory interpretation de novo. *Villanueva v. Dowell (In re Villanueva)*, 274 B.R. 836, 840 (9th Cir.BAP2002). When there is a question as to our jurisdiction, we are "entitled to raise [that issue] sua sponte and [address it] de novo." *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 903 (9th Cir. BAP1999).

## V. DISCUSSION

### A. *Jurisdiction*

#### 1. *Finality*

■ Appellate jurisdiction requires that the order to be reviewed is final. 28 U.S.C. § 158. "A disposition is final if it contains 'a *complete* act of adjudication,' that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter." *Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 307 (9th Cir.1990) (emphasis in original) (citations omitted). In bankruptcy, a complete act of adjudication does not need to end the entire case, but must "end any of the interim disputes from which appeal would lie." *Id.* at 307 n. 1;

*see also White v. White (In re White)*, 727 F.2d 884, 885 (9th Cir.1984). The Trustee argues that the Order Denying Confirmation was a final order, which the Debtors failed to timely appeal.[5]

■ In chapter 13, only a debtor can file a plan. However, because chapter 13 plans are filed voluntarily by debtors who have the ability to amend them, an order denying confirmation of a plan is considered to be interlocutory and not a final order unless the underlying case is also dismissed. *Nicholes v. Johnny Appleseed of Wash. (In re Nicholes)*, 184 B.R. 82, 86 (9th Cir. BAP 1995); *Simons v. Fed. Deposit Ins. Corp. (In re Simons)*, 908 F.2d 643, 644–45 (10th Cir.1990) (collecting cases). Thus, if the bankruptcy case is not dismissed, a debtor is effectively precluded from appellate review of an order denying confirmation of a plan unless he or she files a successful motion for leave to appeal an interlocutory order. 28 U.S.C. § 158(a)(3); *compare Maiorino v. Branford Sav. Bank*, 691 F.2d 89, 91 (2d Cir. 1982) (dismissing appeal as interlocutory) *and Sparks v. HSBC Auto Fin.*, 299 Fed. Appx. 499 (6th Cir.2008) (same) *with Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799 (9th Cir. BAP 2007) (leave to appeal interlocutory order denying confirmation of debtor's chapter 13 plan granted), *aff'd*, 577 F.3d 1026 (9th Cir.2009), *cert. granted*, —— U.S. ——, 130 S.Ct. 2097, 176 L.Ed.2d 721 (2010).

■ While the denial of plan confirmation is interlocutory, it is well-settled that an order confirming a plan is a final order from which an appeal can be properly taken. *Great Lakes Higher Ed. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1087 (9th Cir.1999). In this case, the Debtors

---

**5.** Under Rules 8001(a) and 8002(a) a final order of the bankruptcy court had to be appealed within 10 days from the date of entry

of the order. (Rule 8002(a) has now been amended to 14 days, but this change did not become effective until December 1, 2009).

amended their original plan to accommodate the bankruptcy court's reasons for denying confirmation of their original plan and then appealed the Confirmation Order. *See In re Simons,* 908 F.2d at 645; *Rady v. Brothers,* 2003 WL 21180694, at *1 (S.D.Ind.2003) ("To achieve a final appealable decision, [d]ebtors have the option of waiting until a plan is confirmed, then appealing that confirmation, or refusing to submit another plan and then appealing the dismissal[.]"). The Trustee asserts that the Order Denying Confirmation of the original plan finally determined a discrete issue of law, which the Debtors should have sought leave to appeal. However, the Debtors' right to appellate review when the final confirmation order *is* entered should not be forfeited simply because they did not seek the opportunity for earlier review. *See e.g., Chase Manhattan Mortg. Corp. v. Rodriguez (In re Rodriguez),* 272 B.R. 54, 57 (D.Conn.2002).

Here, the interlocutory Order Denying Confirmation merged into the court's final confirmation order, and is sufficient to support appellate jurisdiction of the earlier interlocutory order. *See Munoz v. Small Bus. Admin.,* 644 F.2d 1361, 1364 (9th Cir.1981); *Pearson v. Stewart (In re Pearson),* 390 B.R. 706, 710 (10th Cir.BAP2008) *vacated as moot by* 309 Fed.Appx. 216 (10th Cir.2009). Accordingly, we accept the Confirmation Order as the final order that challenges the Order Denying Confirmation.

### 2. *Standing*

■ Even though we find the Debtors have timely appealed a final order, to have jurisdiction over the appeal, we must also address whether the Debtors have standing to pursue the appeal. *Paine v. Dickey (In re Paine),* 250 B.R. 99, 104 (9th Cir. BAP 2000). A party has standing to appeal an order if it diminishes his or her property, increases his or her burdens, or detrimentally affects his or her rights. *Fondiller v. Robertson (In re Fondiller),* 707 F.2d 441, 442 (9th Cir.1983).

■ The Debtors argue they were denied the right to have their original chapter 13 plan confirmed because the bankruptcy court erred in its interpretation of the Bankruptcy Code and Ninth Circuit case law by requiring them to amend their original plan to include a provision they believed was erroneous. If the bankruptcy court misapplied the correct legal standard in considering confirmation of the Debtors' original plan, and thereby denied them the right to have their original plan confirmed, then the Debtors are sufficiently aggrieved to have standing to appeal. As the Eighth Circuit reasoned in *Zahn v. Fink (In re Zahn),* 526 F.3d 1140, 1143 (8th Cir.2008):

> Not to allow a debtor to appeal confirmation of her own plan would require a debtor to comply with a plan that contains provisions the debtor does not believe are required by the Bankruptcy Code, while losing her right to appeal those provisions. In this case, the preconfirmation requirement by the bankruptcy court to include the IRA distributions ... is an issue strongly disputed ... because she believes the Bankruptcy Code does not mandate such inclusion. [The] confirmed amended plan may be contrary to bankruptcy law and should be subject to appellate review.

■ Thus, because "a party may appeal from a judgment in his favor when there has been some error prejudicial to him, or he has not received all he is entitled to," the Debtors have standing to appeal the Confirmation Order. *Id.* at 1142.

*3. Mootness*

█ Finally, we address whether the appeal is moot. The Trustee argues there is no longer a live controversy because the Debtors' amended plan has been confirmed. We have jurisdiction only over actual cases and live controversies. *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir.2005).

█ When parties have an interest in the outcome of litigation, there is a live case or controversy. However, an appeal is moot when the appellate court cannot grant effective relief to the appealing party even if it decides the merits in his or her favor. *Id.* Conversely, if we can grant such relief, the appeal is not moot. *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986).

█ As discussed above, the Debtors amended their original plan to include a provision they believed was erroneous in order to have the plan confirmed. If we determine the bankruptcy court erred when it required the Debtors to pay their unimpaired car loan through their plan, the Debtors' may have their original plan confirmed and the Confirmation Order vacated. Thus, it is possible to fashion some relief and therefore, the appeal is not moot.

Having established our jurisdiction over the appeal, we turn to its merits.

## B. *Merits*

The parties' positions are as follows: the Debtors argue that they have an absolute right to make payments on unimpaired claims directly to the creditor; and the trustee argues that while not all unimpaired claims must be paid through the plan, the bankruptcy court has the discretion to determine when a payment must be paid through the plan, and the bankruptcy court properly exercised its discretion here. Each party relies on *Lopez* to support its position.

### 1. *The Code Does Not Prohibit Direct Payments To A Creditor*

█ The bankruptcy trustee in *Lopez* argued that §§ 1322 and 1326 required that the chapter 13 trustee make all distributions to creditors. *Lopez*, 372 B.R. at 50–51. The court in *Lopez* concluded that simply because Congress intended for chapter 13 trustee's fees to be paid from plan payments, it did not "inherently lead to a conclusion that *all* payments must therefore be made under the plan." *Lopez*, 372 B.R. at 55 (emphasis in original).

Under § 1322(a), a chapter 13 plan must:

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class; and

(4) notwithstanding any other provision of this section, a plan may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5–year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1322(a).

Section 1326(c) provides that "[e]xcept as otherwise provided in the plan or in the

order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1326(c). Additionally, a bankruptcy trustee has duties, which require the trustee to monitor performance under the plan. 11 U.S.C. §§ 1302(b)(1); 1307(c). However, none of these provisions create an inherent presumption that all payments must be made by the trustee:

> Section 1322(a)(1) does not require that all debts must be paid through the plan; it merely requires that the debtor must submit enough money from his future earnings to "the supervision and control of the trustee" as is necessary to fund the plan. Section 1322(a)(1) says nothing else, though, about what exactly must be paid through the plan.

*Lopez*, 372 B.R. at 51 (emphasis added).

Furthermore,

> [a] plain reading of [§ 1326(c)] leads to the conclusion that Congress intended that some debts other than those specifically enumerated in Section 1326(a)(1) could also be paid by the debtor outside the plan, so long as either the plan itself or the order confirming the plan allows it.

*Id.* at 52; *see also, In re Vigil* 344 B.R. 624, 629 (Bankr.D.N.M.2006) (Because § 1326(c) contemplates that some payments will not be made by the trustee, a general rule requiring all payments be disbursed by the trustee is inappropriate.). Therefore, under the Code, a chapter 13 debtor may directly pay a creditor.

2. *The Code Provides Bankruptcy Courts With The Discretion To Determine When Direct Payments May Not Be Appropriate*

■ The Debtors argue that under *Lopez* they have an absolute right to make direct payments to creditors on unimpaired claims. We disagree. As the *Lo-*

*pez* court stated, "the power to make payments in Chapter 13 directly to creditors has never been in doubt," but "[t]he problem, however, lies in setting proper boundaries to the power contained in Section 1326(c)." *Lopez*, 372 B.R. at 46.

The Bankruptcy Code provides no direction as to "when it is appropriate to insert such direct payment provisions in the plan or in the confirmation order." *Id.; see also, In re Aberegg*, 961 F.2d 1307, 1309 (7th Cir.1992) (The language of § 1322(a)(1) has been "uniformly interpreted as giving bankruptcy courts the discretion to permit debtors to make payment directly to some secured creditors, provided that the plan meets all the confirmability requirements set forth in § 1325(a)."). Thus, bankruptcy courts have been afforded the discretion to make the determination of when direct payments may or may not be appropriate based upon the confirmation requirements of § 1325, policy reasons, and the factors set forth by case law, local rules or guidelines. *Lopez*, 372 B.R. at 46–47 ("Reflecting the discretion granted by the Code, different courts and different circuits have different rules on the permissibility of direct payment, a fact unchanged by or since [*Fulkrod v. Barmettler (In re Fulkrod)*, 126 B.R. 584 (9th Cir. BAP 1991) *aff'd sub. nom., Fulkrod v. Savage (In re Fulkrod)*, 973 F.2d 801 (9th Cir.1992)].") (collecting cases).

■ Bankruptcy courts may require that payments be made through the plan based on specific factors or reasons such as administrative efficiency, tracking of payments, fairness and treatment of creditors, and the determination that there is a reduction of plan failure when all payments are made through the plan. *See, e.g., Barber v. Griffin (In re Barber)*, 191 B.R. 879, 884–85 (D.Kan.1996); *In re Perez*, 339 B.R. 385, 409 (Bankr.S.D.Tex.2006);

*In re Miles,* 415 B.R. 108, 116 (Bankr. E.D.Pa.2009) (citing various factors).

 Indeed, some bankruptcy courts have enacted local rules defining the parameters of what payments will be allowed to be made directly to creditors. For example, after researching the effectiveness of chapter 13 plans, the bankruptcy court in the Southern District of Texas developed a local rule that requires, unless a debtor can justify an exemption, that all mortgage payments be made through the plan. *In re Perez,* 339 B.R. at 391–92; S. Dist. of Tex., Local Bankr.R. 3015(b). In contrast, the Central District of California bankruptcy court has established local rules that give debtors the discretion of paying post-confirmation mortgage payments directly to creditors. *See* Cent. Dist. of Cal., Local Bankr.R. 3015–1(m)(2) and (3). Additionally, a bankruptcy court may assert its discretion by defining certain guidelines for when payments must be made through chapter 13 plans by enacting standing or general orders. *See, e.g.,* Dist. of Ariz., Standing Bankruptcy Order on Conduit Mortgage Payments in Tucson Chapter 13 Cases.

### 3. *The Bankruptcy Court Failed To Properly Apply §§ 1326(c) And 1322(a) Because Its Decision Was Not Based On Any Disclosed Standard Or Rule*

 In this case, the Trustee contends that it is the general practice in Western Washington that debtors must make all payments to creditors through the plan. However, there is no local rule, general order, judge's requested procedure, or chapter 13 plan guideline that imposes such a requirement. A debtor or debtor's counsel unfamiliar with the practice in the district would have no way of knowing that a plan proposal to pay a creditor directly would be disallowed or understand the reasons why such a proposal would bar confirmation of a plan.

The Trustee contends, however, that the bankruptcy judges in the Western District of Washington exercise their discretion by applying the factors set out in *In re Genereux,* 137 B.R. 411, 412–13 (Bankr. W.D.Wash.1992) to determine if payments may be made directly to creditors. Such factors include: (1) the ability of the bankruptcy trustee to monitor future direct payments; (2) the potential burden on the trustee of monitoring direct payments; and (3) the possible effect on the bankruptcy trustee's salary or funding of the Trustee's Office. However, in this case, the bankruptcy court made no mention of any of these factors. It based its decision instead on an undefined policy reason:

> I mean, the goal of a debtor in a Chapter 13 has to be performance. And they didn't perform prior to bankruptcy, for whatever reason. The structure of bankruptcy, particularly a 13 where we're trying to help them save some assets like houses and cars, has to be to put them in a situation where they get the best shot at that, candidly, in spite of themselves.

Hr'g Tr. at 7:16–22.

Neither did the bankruptcy court make a finding that the Debtors' proposal to make direct payments to the Bank on its unimpaired claim failed to meet the confirmation requirements of § 1325(a). *See, e.g., First Bank & Trust v. Gross (In re Reid),* 179 B.R. 504, 507 (E.D.Tex.1995) (denying plan that proposed direct payments because the plan failed to treat all impaired secured creditors equally under § 1322(a)(3)).

The bankruptcy court made no determination that the Debtors' originally proposed plan was proposed in bad faith, was not feasible, or otherwise did not meet the

requirements of § 1325(a). It provided no clear enumerated factors or general standard against which it made its decision to preclude confirmation of the Debtors' original plan. Thus, the bankruptcy court abused the discretion afforded to it by the Code when it denied the confirmation of Debtors' original plan.

## VI. CONCLUSION

Because the Debtors had no notice of the standard used by the bankruptcy court to require that car payments be made through the plan, we REVERSE the Confirmation Order, VACATE the Order Denying Confirmation, and REMAND the matter to the bankruptcy court with instructions to enter an order confirming the Debtors' originally proposed plan.[6]

---

**6.** We note that the undisclosed standard which mandates reversal in this case can be avoided in future cases by having the standard publicized in whatever way the bankruptcy judges in the district deem appropriate.