NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   WW-10-1397-JuWaPa |
| SCOTT C. TOWNLEY and STEPHANIE TASHIRO-TOWNLEY, | Bk. No.   09-22120 |
| Debtors. | |
| SCOTT C. TOWNLEY; STEPHANIE TASHIRO-TOWNLEY, | |
| Appellants, | |
| v. | M E M O R A N D U M* |
| K. MICHAEL FITZGERALD, Chapter 13 Trustee, | |
| Appellee. | |

Argued and Submitted on October 21, 2011
at Seattle, Washington

Filed - November 7, 2011

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc Barreca, Bankruptcy Judge, Presiding
_____

Appearances:   Appellant Stephanie Tashiro-Townley argued for
Appellant Scott C. Townley and herself pro se;
Jason Wilson-Aguilar, Esq., Office of K. Michael
Fitzgerald, Chapter 13 Trusee, argued for
Appellee K. Mitchell Fitzgerald, Chapter 13
Trustee.
_____

      * This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

Before:  JURY, WALLACE,[**] and PAPPAS, Bankruptcy Judges.

Appellants, chapter 13[1] debtors Scott C. Townley and Stephanie Tashiro-Townley, appeal the bankruptcy court's orders (1) denying confirmation of their plan and dismissing their case and (2) denying debtors' motion for reconsideration.

The order dismissing debtors' case was effective immediately because debtors did not seek a stay of the order and the automatic stay terminated by operation of law under § 362(c).  After dismissal, and while this appeal was pending, debtors' mortgage lien creditor foreclosed on their residence. The foreclosure trustee recorded the trustee's deed reciting the terms of the sale in December 2010 and debtors have no right to redeem their property under Washington law.  As a result, we cannot provide debtors any effective relief even if we were to decide to reverse the bankruptcy court's orders.  Accordingly, we lack jurisdiction and DISMISS this appeal as moot.

Alternatively, even if this appeal were not moot, we would AFFIRM the bankruptcy court's orders.

## I.  FACTS

On November 18, 2009, debtors filed their chapter 13 petition, and the case was assigned to the Honorable Karen A. Overstreet.  Appellee, K. Michael Fitzgerald, was appointed the

---

[**] Hon. Mark S. Wallace, Bankruptcy Judge for the Central District of California, sitting by designation.

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

chapter 13 trustee.

Debtors' Schedule A showed that they owned residential property located in Maple Valley, Washington, valued at $300,000. Schedule D showed that their residence was encumbered by a $285,612 first mortgage and a $36,800.44 second mortgage, with Litton Loan Servicing ("Litton) designated as the secured creditor for both loans. Debtors' first mortgage had an adjustable rate of interest with their monthly payments averaging $2,300.

Debtors' Schedule I reflected average monthly income of $2,688.94, the majority of which came from Mr. Townley's employment as an elementary school music teacher. Schedule I also showed $455 monthly income from Mr. Townley's business, YO2MA LLC, which offered consulting services to small businesses. Debtors' Schedule J showed expenses of $2,439, which did not include rent or a mortgage payment. Debtors' monthly net income was $249.94.

Debtors proposed a chapter 13 plan providing for monthly plan payments of $250 for fifty months, which were to be paid solely to Wells Fargo for a $219.78 monthly payment towards a vehicle. The plan provided that debtors would surrender their residential property upon confirmation. Under the heading, "Other Plan Provisions," debtors' plan stated that although they had no income in 2009 from YO2MA LLC, they had received a commitment letter from Luxury Aviation Services Inc. for significant consulting fees. Debtors stated that they had not yet received any of the fees, but if they did receive them in the near future, they would amend Schedule I and their

-3-

Chapter 13 plan by January 15, 2010, to pay their auto loan, mortgage arrearages for both mortgages and, if high enough, 100% to unsecured creditors and would close their case.[2]

The confirmation hearing, initially set for February 3, 2010, was continued to March 17, 2010, then May 5, 2010, then June 16, 2010, then July 29, 2010, and, finally August 26, 2010.

On May 12, 2010, the Bank of New York Mellon f/k/a the Bank of New York (the "Bank"), as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-10, through its servicing agent Litton, filed a motion for relief from stay as to debtors' real property. The hearing was set for June 11, 2010. In support of the motion, Litton submitted the declaration of a bankruptcy specialist who stated that the original lender, Countrywide Home Loans, Inc., specially endorsed the note to the Bank. The declaration further stated that debtors were in default for payments owed on and after January 1, 2009, in an amount over $41,000.

On May 21, 2010, debtors' attorney filed a motion to withdraw, citing a difference in opinion with debtors about how to proceed with their chapter 13 case as the reason for withdrawal. The motion also stated that debtors had requested their attorney to withdraw before the June 11, 2010 hearing on the Bank's motion for relief from stay.

On June 3, 2010, debtors responded pro se to the motion for relief from stay. Debtors admitted to signing the note and deed of trust for the purchase of their residence, but questioned

_____

[2] This same language was on their Schedule I.

-4-

whether the Bank was the real party in interest. Debtors requested the court to dismiss the motion or stay the action pending further discovery.

At the June 11, 2010 hearing on the motion for relief from stay, Judge Overstreet presided. The court first authorized debtors' attorney to withdraw. Next, the court agreed with debtors that the Bank had not proven its standing to obtain relief from stay. The court found the bankruptcy specialist's declaration insufficient because it did not state that the Bank was the holder of the note or refer to the servicing agreement that permitted Litton to hold the note for the Bank. The court ordered Litton's attorney to provide debtors with a certified copy of the original note. The court continued the matter to July 29, 2010, pending the production of further evidence from Litton that demonstrated its standing or that of the Bank.

On July 13, 2010, debtors' case was reassigned to the Honorable Marc Barreca.

On July 19, 2010, the chapter 13 trustee filed an objection to confirmation of debtors' plan and motion to dismiss, with a hearing date of August 26, 2010. The trustee objected to debtors' plan for a number of reasons, including that the plan was internally contradictory. Specifically, debtors proposed a fifty-month plan when they qualified to file a thirty-six-month plan. The plan further stated that debtors would pay projected disposable income of $5,190.84, but their current monthly income was below the Washington State median and, therefore, by definition, debtors had no projected disposable income. In addition, the trustee pointed out that debtors apparently had

not received the consulting fees for Mr. Townley's business because the January 15, 2010 deadline for amending their Schedule I and chapter 13 plan had long since passed.

The trustee also objected to debtors' surrender of their residence in the plan because there was no deadline for that surrender and their intent to surrender the property contradicted other provisions in their plan. Finally, the trustee objected to any provision in the plan that would accelerate the payment of debtors' car loan at the expense of unsecured creditors. For all these reasons, the trustee maintained that debtors' plan could not be confirmed and that their case should be dismissed if they did not file a confirmable amended plan, which eliminated the defects, by August 19, 2010.

The trustee also requested that the court take judicial notice of the fact that debtors' mortgage lien creditor had moved for relief from stay and that debtors had responded with a demand that the lien holder prove that it was the holder of debtors' original promissory note.

On July 29, 2010, Judge Barreca heard the continued motion for relief from stay and debtor's plan confirmation. Litton's counsel had not yet complied with Judge Overstreet's previous request to provide proof that the Bank was holding the note or that Litton, as servicer, was holding the note for the Bank. Litton maintained that its failure to provide the proof was immaterial since debtors' plan stated that they intended to surrender the residence. However, Ms. Tashiro-Townley stated at the hearing that debtors intended to amend their plan based on

-6-

the outcome of the court's ruling on the motion for relief from stay.

The dialog between debtors and the court shows that debtors thought that once the court ruled against the Bank on its motion for relief from stay for lack of standing, the Bank's secured claim would become unsecured and dischargeable in their chapter 13 proceeding. The court explained to debtors that although the Bank may not have standing to seek relief from the automatic stay, debtors would not be getting the house free of the Bank's lien. Moreover, the court further explained to debtors that although they did not know which entity held their note, if they were going to keep their house, their chapter 13 plan had to provide for payments to cure their arrearages. Finally, the court gave Litton's attorney a week to provide the proof for the Bank's or Litton's standing which was previously ordered by Judge Overstreet. The court continued the motion for relief from stay and debtors' plan confirmation for hearing on August 26, 2010.

On August 18, 2010, debtors filed their amended plan. The amended plan again proposed monthly plan payments of $250 for fifty months but no longer provided for the surrender of debtors' residence. Thus, although not entirely clear, the amended plan implied that debtors intended to keep their property, yet they did not include a provision to cure their prepetition arrearages. Under the heading "Additional Case-Specific Provisions," debtors stated that they would "avoid the liens of Litton Loan Servicing."

On August 18, 2010, debtors also filed an objection to the

-7-

secured proof of claim of Litton, as servicing agent for the Bank, which was scheduled to be heard on October 7, 2010. In that pleading, debtors maintained that there was no endorsement showing a transfer from Countrywide Homes Loans to the Bank.

On August 26, 2010, the continued hearings on the motion for relief from stay, debtors' plan confirmation and the trustee's motion to dismiss were heard. The bankruptcy court first considered the objections to debtors' amended plan. The trustee argued that debtors' amended plan failed to address the first mortgage and did not provide for payment of the prepetition arrearages or ongoing mortgage payments. The trustee further asserted that debtors' net monthly income was insufficient to support the mortgage payment and, therefore, debtors could not propose a feasible plan to provide for the arrearages and ongoing payments. Litton objected to debtors' amended plan essentially on these same grounds.

Debtors evidently had mistakenly thought that the bankruptcy court would consider whether the Bank had proven its claim and standing prior to ruling on the plan confirmation issues and the dismissal of their case. In that regard, Ms. Tashiro-Townley stated at the hearing that after the October 7, 2010 hearing on their objection to the Bank's claim, debtors would make adjustments to their amended plan "as needed." In response, the court asked:

> "But if your income as stated isn't sufficient to make more than $250 a month over all, how would you both make the current plan payments and catch up the arrearage that's [sic] much more behind now?"

Ms. Tashiro-Townley responded:

-8-

"Right. Right now we're working as hard as we can to make sure that we have got what we need in order to do that. But we still have – we're still not sure who we'd be paying our money to for the mortgage."

Hr'g Tr. 8:12-21 (August 26, 2010).

After hearing argument, the bankruptcy court sustained the trustee's objection and dismissed debtors' case without addressing whether the Bank, or Litton, had standing to move for relief from stay. Because of its ruling, the court found it was unnecessary to rule on the Bank's motion or debtors' objection to the Bank's claim. The court entered the order denying confirmation of debtors' chapter 13 plan and dismissing their case on August 31, 2010.

One day prior to the entry of the order, on August 30, 2010, debtors moved for reconsideration of the court's decision to dismiss their case. In their motion, debtors acknowledged that they were currently unemployed. Debtors argued, among other things, that their due process rights were violated because the court did not address the pending motion for relief from stay. Moreover, they alleged that the bankruptcy judge had prejudged their case simply because debtors wanted to know who held the note on their property. Finally, debtors maintained that they were victims of mortgage fraud and thus their mortgage debt should be deemed unsecured and dischargeable.

On October 1, 2010, the court issued a written decision and order denying debtors' motion for reconsideration. First, the court found debtors' due process rights were not violated because they received proper and timely service of the trustee's objection to confirmation of their plan. Second, the court

-9-

found that its ruling sustaining the trustee's objections to debtors' plan and dismissing their case mooted out Litton's request for relief from stay and debtors' objection to the Bank's claim. Next, the court found that debtors' allegations regarding the court's alleged bias toward their case were unsupported and unfounded. Fourth, the court found that counsel for Litton made an offer of proof that she had the blue ink copy of the note in her possession at the hearing. Fifth, the court stated that it was not required to reach issues regarding mortgage fraud to rule on plan confirmation.

Sixth and last, the court found debtors were given ample opportunity to present a confirmable plan. In that regard, the court found that debtors' first plan was filed on December 1, 2009, and eight months later, debtors filed their amended plan. The court observed that the amended plan implied debtors' intent to retain their property, yet they provided no payments to any mortgage creditor in their plan. The court further observed that debtors' claim objection was premised solely on their assertion that Litton lacked standing to enforce the note; however, debtors never disputed signing the note and deed of trust.

In sum, the court reiterated that its previous decision denying confirmation of debtors' amended plan was appropriate because (1) debtors did not have enough income to support the payment of the mortgage, irrespective of the identity of the party with standing to enforce the note; (2) debtors' amended plan impermissibly attempted to modify the rights of its mortgage lien creditor under § 1322(b)(2); and (3) debtors'

-10-

amended plan violated § 1322(b)(5) because it did not provide for the maintenance of their monthly mortgage payments or for the curing of arrearages within a reasonable time.  The court declined to give debtors additional time to make further amendments to their plan.

Debtors timely appealed.[3]

Debtors did not request a stay of the dismissal order and on December 3, 2010, Northwest Trustee Services, as trustee under the deed of trust, held a foreclosure sale of debtors' property.  The property was sold to the Bank for $299,000.  At the hearing on this appeal, debtors represented that they were still in the property, but no longer on title.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(L).  As set forth below, we conclude that this appeal has been rendered moot by the post-dismissal foreclosure sale.  Therefore, we do not have jurisdiction over the moot appeal.  I.R.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 900 (9th Cir. 2001).

If this appeal is not moot, an order denying confirmation

---

[3] The trustee contends that debtors' notice of appeal of the August 31, 2010 order dismissing their case was untimely.  We disagree.  Rule 8002(b) states if any party makes a timely motion under Rule 9023, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding.  Here, debtors filed a timely motion for reconsideration of the August 31, 2010 order.  The court did not issue its decision denying debtors' motion for reconsideration until October 1, 2010.  Debtors filed their notice of appeal on October 15, 2010.  Thus, debtors' appeal was within the fourteen-day period specified under Rule 8002(a).

-11-

of a plan is considered to be interlocutory and not a final order unless the underlying case is also dismissed. <u>Giesbrecht v. Fitzgerald (In re Giesbrecht)</u>, 429 B.R. 682, 687 (9th Cir. BAP 2010). Here, debtors' underlying case has also been dismissed. Therefore, we have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.  Whether this appeal is moot;

B.  Whether the bankruptcy court abused its discretion in dismissing debtors' case for cause under § 1307(c)(5); and

C.  Whether the bankruptcy court abused its discretion in denying debtors' motion for reconsideration.

## IV.   STANDARDS OF REVIEW

Mootness is a question of law reviewed de novo. <u>S. Or. Barter Fair v. Jackson Cnty., Or.</u>, 372 F.3d 1128, 1133 (9th Cir. 2004). We also review chapter 13 plan confirmation issues requiring statutory interpretation de novo. <u>In re Giesbrecht</u>, 429 B.R. at 687.

We review a decision to dismiss a chapter 13 case for abuse of discretion, regardless of whether the court dismisses under any of the enumerated paragraphs of § 1307(c). <u>Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)</u>, 455 B.R. 904, 914 Cir. BAP 2011). We also review for abuse of discretion a bankruptcy court's decision to deny a motion for reconsideration. <u>Arrow Elecs., Inc. v. Justus (In re Kaypro)</u>, 218 F.3d 1070, 1073 (9th Cir. 2000).

We follow a two-part test to determine objectively whether the bankruptcy court abused its discretion. <u>United States v.</u>

-12-

Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009).  First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested."  Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard.  Id. at 1262 n.20.  We affirm the court's factual findings unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id. (internal quotation marks omitted).  If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in the record, then the bankruptcy court abused its discretion.  Id.

## V.  DISCUSSION

### A.  This Appeal Is Moot

The test for mootness of an appeal is whether we can grant debtors any effective relief in the event we decide to reverse the bankruptcy court's order denying the confirmation of debtors' plan and dismissing their case.  Pilate v. Burrell (In re Burrell), 415 F.3d 994, 998 (9th Cir. 2005).  If we cannot grant effective relief, we lack jurisdiction and must dismiss the appeal.  In re Pattullo, 271 F.3d at 900.

The order dismissing debtors' case was effective immediately because debtors did not seek a stay of the order. Weston v. Cibula (In re Weston), 101 B.R. 202 (Bankr. C.D. Cal. 1989), aff'd 123 B.R. 466 (9th Cir. BAP 1991), aff'd 967 F.2d 596 (9th Cir. 1992).  Upon dismissal of debtors' case, the automatic stay terminated by operation of law under § 362(c).

-13-

Debtors' mortgage lien creditor foreclosed on their property, the trustee's deed reciting the terms of the sale was recorded on December 10, 2010, and debtors have no right to redeem their property under Washington law.  Wash. Rev. Code 61.24.050.

We thus conclude that debtors' appeal is moot because were we to reverse and reinstate debtors' case, it would be impossible to grant debtors effective relief.  Generally, an automatic stay does not reinstate retroactively upon the vacation of a dismissal.  Sewell v. MGF Funding, Inc. (In re Sewell), 345 B.R. 174, 180 (9th Cir. BAP 2006).  Therefore, reinstating debtors' case will not bring their residential property back into the estate.  Further, the foreclosure sale cut off debtors' right to cure their prepetition arrearages under § 1322(b)(5).  State of Or. v. Hurt (In re Hurt), 158 B.R. 154, 160 (9th Cir. BAP 1993) (stating that a debtor has the right to cure under § 1322(b)(5) up to the foreclosure sale).  Accordingly, as a matter of law, debtors would not be able to confirm a chapter 13 plan which provided for them to retain their property.[4]

For these reasons, we conclude that debtors' appeal has

---

[4] These same facts would also render this appeal moot under the holding of Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.), 846 F.2d 1170, 1173 (9th Cir. 1988) ("Bankruptcy mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets). The Ninth Circuit recognizes a narrow exception to the mootness rule when real property is sold to a creditor who is a party to the appeal.  However, the exception is invoked only when the sale is subject to statutory rights of redemption.  Here, the Bank is not a party to this appeal and debtors had no right to redeem the property after a nonjudicial foreclosure sale under Washington law.

been rendered moot.[5]

**B.    Even If This Appeal Were Not Moot, We Affirm The Bankruptcy Court's Orders**

On appeal, debtors assign numerous errors, which we group around four basic contentions for convenience in discussion: (1) the bankruptcy court erred in failing to address whether the Bank had standing to assert a claim in their chapter 13 case or move for relief from stay before it ruled on plan confirmation issues and the trustee's motion to dismiss; (2) the alleged bias of the bankruptcy judge requires vacation of the dismissal order; (3) debtors were denied due process; and (4) the dismissal order constituted an abuse of discretion.

**1.    Standing**

Debtors argue that the court should have considered their allegations regarding the validity of the Bank's claim and enforced Judge Overstreet's order that required the Bank to prove its standing prior to dismissing their case.  Debtors contend that without addressing the subject matter of the order, the court's denial of the plan (a plan based on an invalid claim) and dismissal was improper.[6]  Debtors cite <u>Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner)</u>, 161 F.3d 1216

---

[5] Debtors represented in their reply brief and at oral argument that they filed suit against the Bank for wrongful foreclosure in the federal district court (Case No. C10-1720). Evidently that case was dismissed and debtors have appealed that order.

[6] Recall that debtors stated at the August 26, 2010 hearing that they intended to further amend their plan as needed after the court ruled on their objection to the Bank's claim which was set for hearing on October 10, 2010.

(9th Cir. 1998) in support of their contentions, but this case is not on point.

In In re Weiner, the creditor brought an adversary proceeding under § 727 to deny Weiner a discharge for undervaluing a wedding ring in his schedules. After holding a bench trial, the bankruptcy court issued an oral ruling denying Weiner a general discharge under § 727 based on its finding that he made a false oath as to the value of the ring. At the hearing, the bankruptcy court was told that the trustee had hired an appraiser to value the jewelry. Several months later, Weiner moved the court to reconsider its oral ruling or for a new trial in light of the trustee-ordered appraisal that valued the ring for less than the $2,500 value Weiner had listed on the schedule. The bankruptcy court denied the motion and later entered a written order denying Weiner a general discharge.

This Panel affirmed that decision on appeal. The Ninth Circuit reversed holding that the bankruptcy court had abused its discretion in denying Weiner's motion to reconsider its oral ruling denying him a discharge. The Ninth Circuit's decision was primarily based on the sequence of events that occurred in the case. For instance, the bankruptcy court knew at the time of trial that the trustee had ordered an appraisal, but instead of waiting for the appraisal to come back, the court issued an oral ruling denying the debtor a discharge. Further, the debtor had filed his motion for reconsideration prior to the court's entry of a written order. The Ninth Circuit held that at a minimum, the bankruptcy court should have taken the trustee-ordered appraisal into consideration in determining whether

-16-

Weiner "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account" under § 727(a)(4)(A) before issuing its written order.

In re Weiner is factually and legally distinguishable from this case. Although Judges Overstreet and Barreca recognized that the Bank had not yet proven its standing for purposes of obtaining relief from the automatic stay, that evidence was immaterial for purposes of debtors' plan confirmation because debtors acknowledged that they had signed the note which was the subject of the motion for relief from stay. When debtors' amended plan showed that they intended to retain their residence, they were required under § 1322(b)(5) to provide for the cure of their prepetition arrearages within a reasonable time and maintain their ongoing mortgage payments, subject to a later determination as to which entity actually held their note. However, the record indicates that debtors were unemployed and could not afford the payments. Therefore, their plan would be unconfirmable on its face because they could not comply with the feasibility requirement under § 1325(a)(6). Under these circumstances, there was no reason for the bankruptcy court to examine the Bank's evidence and rule on its standing. Finally, we are not aware of any authority that would require the bankruptcy court to rule on the merits of the Bank's standing before dismissing debtors' bankruptcy case for other reasons.[7]

---

[7] Debtors contend on appeal that they will amend the plan in its entirety once the matter is remanded to the bankruptcy court for resolution on the issue of standing. However, debtors do not state anywhere in the record that their income is sufficient to
(continued...)

-17-

## 2. Bias Of The Bankruptcy Judge

Debtors also raise the bankruptcy judge's alleged bias as a basis for reversal. Debtors argue that the court gave preferential treatment to the attorney for the Bank because she did not file the evidence proving the Bank's standing by the due date in violation of Judge Overstreet's order. The record does not support debtors' contention. Moreover, this allegation does not create a reasonable doubt about the bankruptcy judge's impartiality.[8] See Seidel v. Durkin (In re Goodwin), 194 B.R. 214, 222 (9th Cir. BAP 1996) (evaluations of bias or prejudice are judged from an objective perspective).

## 3. Due Process

Next, debtors assert that their due process rights were violated. The alleged violation appears to be based on the bankruptcy court's decision to dismiss debtors' case without deciding whether the Bank had standing. Debtors' due process argument was rejected by the bankruptcy court. We agree that no

---

[7](...continued)
pay the arrearages or the ongoing mortgage payments. At oral argument, Ms. Tashiro-Townley represented that debtors have not made a payment on their mortgage since May 2009. She also stated that although debtors were now gainfully employed, she did not know if they could make the payments on the arrearages and keep current on their mortgage.

[8] The bankruptcy court never condoned the failure of Litton's attorney to abide by Judge Overstreet's order. Rather, the court reluctantly gave her additional time to provide the evidence. Further, the attorney made an offer of proof at the August 26, 2010 hearing that she had obtained the blue ink copy of the note from her client and that she had it with her in court that day. However, it was unnecessary for the court to actually examine the evidence when it had decided to dismiss debtors' case on other grounds.

-18-

due process violation occurred here.

"The fundamental requisite of due process of law is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Debtors received notice of the hearing on the trustee's objection to their plan and motion to dismiss. Debtors presented both oral and written argument in connection with the trustee's objections to their plan and motion to dismiss. Further, at the July 29, 2010 continued hearing on the Bank's motion for relief from stay, debtors had the benefit of the court explaining to them that their objection to the Bank's standing did not mean that they did not owe the mortgage payments and could live in their house for free. Debtors had the opportunity to amend their plan to include cure payments to their mortgage lien creditor, which they did not do. Under these circumstances, the court gave debtors their full due process rights before it dismissed their case.

**4.   Dismissal Of Debtors' Chapter 13 Case**

We now reach the merits of the dismissal order under the standards in § 1307(c)(5) which provides in relevant part:

> (c) . . . on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
>
> . . .
>
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan[.]

-19-

Section 1307(c) establishes a two-step analysis for dealing with questions of conversion and dismissal. "First, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006).

Statutory cause existed for the dismissal of debtors' case. First, the record supports the bankruptcy court's decision to deny confirmation of debtors' amended plan because they could not submit a confirmable plan: (1) debtors did not have enough income to support the payment of their mortgage, irrespective of the identity of the party with standing to enforce the note; (2) the amended plan impermissibly modified the rights of debtors' secured creditor under §1322(b)(2); and (3) the amended plan did not provide for monthly payments or for arrearages to be cured within a reasonable time in violation of § 1322(b)(5). Thus, debtors' amended plan was not confirmable as a matter of law.

Second, the bankruptcy court did not abuse its discretion by declining to extend the time for debtors to make further amendments to their plan. The record supports the court's finding that debtors had ample opportunity to present a confirmable plan.

Finally, the record shows that dismissal was in the best interests of the creditors and the estate. The only creditor that participated in debtors' case was its mortgage lien creditor and debtors were in default for over $41,000. Debtors

-20-

had the benefit of occupying the property for months both pre- and postpetition without making any payments. After two hearings and the submission of their amended plan which contained infeasible and inconsistent provisions, debtors' income level had not changed. Therefore, the best interests of creditors element resolves itself primarily to the interest of debtors' mortgage lien creditor who participated in the case. Goodrich v. Lines, 284 F.2d 874, 877 (9th Cir. 1960) (in determining the best interests of creditors, the interest of a single creditor with a large enough claim will suffice). Moreover, the trustee's avoiding powers were not at issue and there was no showing that recoveries by the trustee would enhance the value of the estate.

Debtors did not request a conversion of their case nor do they challenge on appeal the bankruptcy court's decision to dismiss rather than convert their case. Accordingly, we conclude the bankruptcy court properly dismissed debtors' case for cause under § 1307(c)(5).

**C.    The Bankruptcy Court Properly Denied Debtors' Motion For Reconsideration**

Last, the court did not abuse its discretion by denying debtors' motion for reconsideration. Debtors did not present newly discovered evidence, demonstrate clear error, or show an intervening change in controlling law. See 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) (setting forth grounds for reconsideration under Fed. R. Civ. P. 59(e)).

**VI.    CONCLUSION**

For the reasons stated, we DISMISS this appeal as moot. If

this appeal were not moot, we would AFFIRM the bankruptcy court's orders.