NOT FOR PUBLICATION

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-14-1559-DJuTa |
| SAN JOSE AIRPORT HOTEL, LLC, DBA Holiday Inn San Jose, | Bk. No. 09-51045 |
| Debtor. | |
| MEYERS LAW GROUP, P.C., | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| MOHAMMED POONJA, Chapter 7 Trustee; MANOU MOBEDSHAHI, | |
| Appellees. | |

Argued and Submitted on October 23, 2015
at San Francisco, California

Filed - November 3, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

Appearances:    Merle Cooper Meyers argued for Appellant.

Before: DUNN, JURY AND TAYLOR, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Meyers Law Group, P.C. ("MLG") served as counsel for the debtors in two jointly administered chapter 11[2] cases ("Chapter 11 Cases"). After the bankruptcy court converted both cases to chapter 7, MLG applied for and obtained approval of its fees and costs earned in the chapter 11 cases. MLG subsequently moved the bankruptcy court for a determination that MLG was entitled to payment of interest on its fees and costs pursuant to a subordination agreement entered into between MLG and the debtors' principal during the Chapter 11 Cases. The bankruptcy court denied the motion without prejudice to refiling in the event of a change of circumstances. MLG appealed. We DISMISS the appeal for lack of jurisdiction.

## I. FACTUAL BACKGROUND

San Jose Airport Hotel, LLC, and its affiliate, Mobedshahi Hotel Group (collectively the "Debtors") filed chapter 11 petitions in February 2009.[3] Manouchehr Mobedshahi was the principal of both Debtors, and both Debtors were represented in the Chapter 11 Cases by MLG. On August 25, 2009, the bankruptcy court ordered joint administration of the Chapter 11 Cases. MLG's employment agreement provided for payment of hourly fees

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] We exercise our discretion to take judicial notice of documents filed in the Debtors' bankruptcy cases and related adversary proceedings. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

and reimbursement of costs, with interest to accrue at the rate of twelve percent per annum.

During the Chapter 11 Cases, Mr. Mobedshahi made a $400,000 loan to the Debtors, secured by a postpetition lien on all of the Debtors' assets, including causes of action. This loan was governed by a debtor-in-possession loan agreement ("Loan Agreement"), which granted Mr. Mobedshahi a superpriority administrative expense claim. Pursuant to the Loan Agreement, as approved by the bankruptcy court, Mr. Mobedshahi's secured claim was to be paid prior to all administrative and other claims with two exceptions. First, the Loan Agreement acknowledged the priority of a prepetition lien on most of the Debtors' assets in favor of General Electric Capital Corporation ("GE"). Second, the Loan Agreement included the following provision regarding subordination ("Subordination Clause"):

> [T]he liens and security interests of [Mr. Mobedshahi], and the superpriority administrative expense claim of [Mr. Mobedshahi], shall be fully and irrevocably subordinated to the following: (a) the allowed fees and expenses of professionals retained by [the Debtors in the Chapter 11 Cases]; and (b) any fees accruing and payable after the [p]etition [d]ate to the United States Trustee pursuant to 28 U.S.C. Section 1930(a)(6).

The Debtors' primary asset was the Holiday Inn San Jose hotel, which was subject to GE's deed of trust. The Debtors twice attempted to sell the hotel, once to Infinity HI, LLC, and once to Sevak & Sons, L.P. When these sales ultimately failed, GE sought and obtained relief from the automatic stay to foreclose on the hotel. The foreclosure sale took place on April 9, 2010, after which the Chapter 11 Cases promptly were converted to chapter 7 on the Debtors' motion. Mohamed Poonja

("Trustee") was appointed chapter 7 trustee for the converted cases ("Chapter 7 Cases").

In the Chapter 7 Cases, MLG applied for and obtained approval of its fees earned and costs incurred in the Chapter 11 Cases. The bankruptcy court's order granting the application ("Fee Order") directed the Trustee to pay the total amount requested, $335,129.52,[4] from available estate funds, including any funds subject to Mr. Mobedshahi's postpetition lien. The Fee Order permitted MLG to seek additional amounts "to the extent accruing after October 31, 2010."

The Trustee brought adversary proceedings against Infinity HI, LLC and Sevak & Sons, L.P., alleging various claims arising out of the failed sales. Infinity HI, LLC eventually paid $175,000 to the estate in settlement of the Trustee's claim ("Infinity Settlement"), and the Trustee ultimately obtained judgment against Sevak & Sons, L.P. in the amount of $11,648,758 ("Sevak Judgment"). The Sevak Judgment remains on appeal with the United States District Court for the Northern District of California.

After the Trustee received the Infinity Settlement, MLG demanded payment of its fees out of the Infinity Settlement proceeds, pursuant to Mr. Mobedshahi's lien and the Subordination Clause. MLG prepared a stipulation that would have provided for the payment of interest on MLG's claim out of funds that otherwise would have been paid to Mr. Mobedshahi on his

---

[4] This amount was net of a retainer MLG received during the pendency of the Chapter 11 Cases.

4

superpriority administrative expense claim. The Trustee refused to sign the stipulation, citing concerns that the estates would be burdened by interest on MLG's fees as well as on Mr. Mobedshahi's claim. However, the Trustee did move the bankruptcy court to permit disbursement of the Infinity Settlement proceeds to MLG and to the United States Trustee, pro rata, for allowed fees and costs pursuant to the Subordination Clause. The Trustee's motion did not address whether the payment to MLG was to be credited to interest or to principal. The bankruptcy court granted the motion, and the funds were disbursed.

On October 15, 2014, MLG filed a supplemental application for compensation ("Supplemental Application"), seeking payment of fees and costs in the combined amount of $20,897.75, which MLG incurred in defending its prior fee application. Concurrently with the Supplemental Application, MLG filed a document entitled Meyers Law Group's Motion to Determine Disposition of Collateral, Pursuant to 11 U.S.C. § 725 ("Disposition Motion"). In the Disposition Motion, MLG requested "an order determining the disposition of present and future collateral encumbered by MLG's secured claim (by way of subordination of the secured postpetition lender [i.e., Mr. Mobedshahi])." MLG argued that the Subordination Clause operated to "trade" the respective priorities of MLG's and Mr. Mobedshahi's claims. Thus, MLG would be entitled to payment of its entire claim, with interest, out of the Infinity Settlement proceeds and ultimately out of the Sevak Judgment before any distribution could be made to Mr. Mobedshahi. In the conclusion of the Disposition Motion, MLG requested "an

5

order directing the disposition of any and all funds that may be received by the Trustee" to which Mr. Mobedshahi's lien would attach, according to the following scheme ("Proposed Disposition"):

> A.   First, to MLG and the UST, proportionately, up to the lesser of (I) the sum of the UST's fees and MLG's allowed fees and costs . . . plus interest, and (ii) Mr. Mobedshahi's loan balance, including interest accrual;
> B.   Second, to Mr. Mobedshahi, up to the remaining amount of his loan  balance, including interest; and
> C.   Third, to Mr. Mobedshahi, up to the amount of MLG's allowed fees and costs . . ., without interest accrual, plus the amount of the UST's fees . . . .

MLG acknowledged that attorney fees ordinarily do not accrue interest except in surplus estates.  In spite of this, MLG argued that the court should order payment of interest on MLG's attorney fees, as the Proposed Disposition would have no effect on creditors other than MLG and Mr. Mobedshahi.  Since the Proposed Disposition would not increase the aggregate amount of the two claims, there would be no increased burden on the estate.

The Trustee filed a joint response to the Supplemental Application and the Disposition Motion.  In his response, the Trustee described his discussions with MLG and his concerns regarding the propriety of paying interest on MLG's claim. Nevertheless, the Trustee did not oppose the Disposition Motion and "recognize[d] that this issue was between Mr. Mobedshahi and MLG; provided however, there was no adverse impact upon the estate."  Mr. Mobedshahi did not respond to the Disposition Motion.

The bankruptcy court held a hearing on the Disposition Motion and the Supplemental Application ("Hearing").  At the

6

Hearing, the court announced that it would grant the Supplemental Application but deny the Disposition Motion. In colloquy during the Hearing, MLG's counsel acknowledged that "there really are no funds right now. We're not - we're saying if and when there - there is collateral proceeds . . . it should be paid to us . . . ." The court likewise noted that "we're not in a situation where there's enough money to pay everybody, anyway." Even with respect to Mr. Mobedshahi's secured claim, the court noted that it was "not clear at this point" whether there would be enough funds in the estate to pay that amount in full.

In explaining its rationale for denying the Disposition Motion, the bankruptcy court stated that the bankruptcy estate had no liability for post-petition interest except in a surplus case and that MLG therefore had a claim only for the face amount of its fees and costs. The court went on to conclude that, if MLG wished to receive interest payments, it would have to seek them from Mr. Mobedshahi rather than from the estate. With regard to MLG's argument that payment of interest on its claim would be carved out solely from funds that would otherwise go to Mr. Mobedshahi, the court made the following statements:

> I think it's a nice distinction, but I don't think it's a correct result. I think what I have to award is nominal fees and that's what I'm going to award. That's all that [§] 726(a)(5) allows. . . .
> . . . .
> Your argument is that the [Subordination Clause] and the - the retainer agreement that you signed with the estate gives you the right to - to interest. And I don't think that those two provisions trump the Code.
> . . . .
> And I'm telling you that I'm not going to give you an order that says that the proceeds from this estate [will] be distributed in that way [i.e., according to the Proposed Disposition]. You are only entitled to a

7

nominal claim . . . .

. . .

[E]ssentially I think there's a conflict between the statute and the way your subordination and employment arrangement worked.

After discussing the pending appeal of the Sevak Judgment, the court told counsel for MLG that MLG was "free to refile the motion" in the event of a change of circumstances, and added, "at this stage in the proceedings that's - that's actually the way I think it should play out."

After the Hearing, the bankruptcy court entered an order denying the Disposition Motion ("Disposition Order"). The Disposition Order contained the following language:

> Except as stated in the Court's oral ruling with respect to the accrual of interest, nothing herein shall be deemed to prejudice MLG's rights and claims against the estate herein or against Manouchehr Mobedshahi or any other party under the terms of [the Subordination Clause], as described in the [Disposition] Motion.

MLG appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We discuss our jurisdiction below.

## III. ISSUE

Whether we have jurisdiction over this appeal.

## IV. STANDARDS OF REVIEW

We can raise issues concerning our own jurisdiction sua sponte, and we address them de novo. Giesbrecht v. Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010).

## V. DISCUSSION

Before considering the substance of this appeal, we consider sua sponte whether we have jurisdiction to do so.

8

Unless an appellant requests and receives leave to appeal from an interlocutory order of the bankruptcy court, we have jurisdiction only over appeals from final orders. 28 U.S.C. § 158(b). A bankruptcy court's order is final if it "1) **resolves** and seriously affects substantive rights and 2) **finally** determines the discrete issue to which it is addressed." Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 769 (9th Cir. 2008) (emphasis added). A final order is one that "clearly evidences the judge's intention that it be the court's final act in the matter." In re Giesbrecht, 429 B.R. at 687 (citing Slimick v. Silva (In re Slimick), 928 F.2d 304, 307 (9th Cir. 1990)). Otherwise, the order does not "end any of the interim disputes from which appeal would lie." In re Slimick, 928 F.2d at 307 n.1.

The Disposition Order was not final. The bankruptcy court stated that MLG was "free to refile" the Disposition Motion should additional funds become available. The Disposition Order moreover provided that it should "not be deemed to prejudice MLG's rights and claims against the estate . . . or against Manouchehr Mobedshahi or any other party." Although this provision contained an exception regarding the bankruptcy court's oral statements "with respect to the accrual of interest," the context of those statements makes clear that the Disposition Order was not intended as the bankruptcy court's final act in the matter.

Indeed, as the bankruptcy court noted and counsel for MLG conceded at the Hearing, at the time the Disposition Motion was filed, the estate did not have sufficient funds to pay even the

9

principal amount of MLG's claim in full, let alone interest on that claim. Under these circumstances, the issue of interest accrual was not ripe for decision. See Texas v. U.S., 523 U.S. 296, 300 (1998) (claim resting upon "contingent future events that may not occur" is not ripe for consideration); see also Ray Charles Foundation v. Robinson, 795 F.3d 1109, 1117 (9th Cir. 2015) ("abstract inquiries" into "speculative" future events are not ripe). The Disposition Motion's lack of ripeness bolsters our conclusion that the Disposition Order was not, and indeed could not have been, a final order.

Having concluded that the Disposition Order was not a final order, we cannot exercise jurisdiction over the appeal unless we grant leave to appeal. Although MLG did not request leave to appeal, we treat the timely notice of appeal as a motion for leave to appeal. Rule 8004(d); Roderick v. Levy (In re Roderick Timber Co.), 185 B.R. 601, 604 (9th Cir. BAP 1995). In determining whether to exercise our discretion to grant leave to appeal, we consider whether the Disposition Order "involve[d] a controlling question of law as to which there is a substantial ground for difference of opinion and whether an immediate appeal may materially advance the ultimate termination of the litigation," as well as whether refusal to grant leave will result in wasted litigation and expense. Id. (citing Official Comm. of Unsecured Creditors v. Credit Lyonnais Bank Nederland, N.V. (In re NSB Film Corp.), 167 B.R. 176, 180 (9th Cir. BAP 1994)). Considering these factors in light of the circumstances discussed above, in particular the lack of sufficient funds in the estate, we conclude that it would be inappropriate to grant

10

leave to appeal.

## VI. CONCLUSION

Based on the foregoing, we conclude that the Disposition Order was not a final order. Because we deny leave to appeal, we lack jurisdiction over the appeal. We DISMISS.

11