FILED

FEB 9 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> LANNY JAY DUGAR, <br>  Debtor. | BAP No. CC-23-1056-SGC <br><br> Bk. No. 1:20-bk-11166-VK |
| DAVID BJORNBAK; QIANG BJORNBAK, <br>  Appellants, <br> v. <br> LANNY JAY DUGAR, <br>  Appellee. | Adv. No. 1:20-ap-01083-VK <br><br> **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Victoria S. Kaufman, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

In 2012, Chapter 7[1] debtor Lanny Jay Dugar's contracting company

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

contracted to remodel the residence of David and Qiang Bjornbak. A dispute quickly arose, and the parties have been litigating with each other since. Dugar eventually stipulated to entry of a $1.5 million judgment against him for breach of contract.

Dugar later filed a chapter 7 bankruptcy petition, and the Bjornbaks sued to deny his discharge pursuant to § 727(a)(2), (a)(3), (a)(4), and (a)(5). The bankruptcy court denied the Bjornbaks' summary judgment motion and ultimately entered a judgment for Dugar after trial. The Bjornbaks appealed. They have not demonstrated any reversible error. Accordingly, we AFFIRM.

## FACTS[2]

### A.    Dugar's bankruptcy.

In July 2020, Dugar, acting pro se, commenced his no-asset chapter 7 case. In his schedules, he listed a total of $555.00 in personal property and no real property. His personal property consisted mostly of clothing and other personal items. According to Dugar, his only financial asset was $5.00 in cash. His schedules stated that he owned no vehicles or non-farm animals, and he had no interests in any businesses. As for his debt, he represented that he owed the Bjornbaks $1,500,000 and the IRS $3,000.[3] He

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Oddly, Dugar listed his total debt owed to all unsecured creditors as $6,000-- $3,000 for taxes and $3,000 owed to all other unsecured creditors.

2

listed no other creditors or debt in his schedules. The chapter 7 trustee filed a report of no distribution in February 2021.

**B.      The objection to discharge adversary proceeding.**

The Bjornbaks timely objected to Dugar's discharge under § 727(a)(2), (a)(3), (a)(4), and (a)(5). The Bjornbaks alleged that Dugar fraudulently concealed multiple assets, including financial accounts, real property, a family trust, motor vehicles, and horses. Foremost, they asserted that Dugar had undisclosed ownership interests in several businesses: American Top Remodeling, Finest Home Remodeling, Inc., California Preferred Builders, Image Home Design, Inc., Hi Tech Remodeling Group, Inc., and ALP Networks, Inc. (collectively, the "Businesses").[4]

According to the Bjornbaks, Dugar additionally concealed his role as an officer, director, or managing executive of the Businesses and his role as a partner with Moshe Ben Nissan and Jacob Sherif in operating the Businesses. The Bjornbaks further alleged that Dugar and his partners took cash derived from these businesses and fraudulently transferred the cash to friends, relatives, and business associates. At all times, they claim, he concealed income he derived from the Businesses and from the real property he secretly owned.

The Bjornbaks further alleged that Dugar concealed his employment

---

[4] As they prosecuted the adversary proceeding, the Bjornbaks added several more business entities to this list. But the specific identity of each of these Businesses largely is irrelevant to our analysis and resolution of this appeal.

3

in 2018 and 2019—and failed to maintain records reflecting his personal financial condition and the condition of the Businesses. The Bjornbaks also alleged that Dugar failed to keep records of his transfers of cash and other assets, including a 2006 Mini Cooper he sold in 2019. Because each of the above-referenced assets, transfers, and management roles were omitted from Dugar's schedules and statement of financial affairs, the Bjornbaks also claimed that Dugar filed materially false schedules and a false statement of financial affairs.

Finally, according to the Bjornbaks, the Business known as Finest Home Remodeling, Inc. "made" millions from 2013 to 2016. The Bjornbaks complained regarding Dugar's failure to keep records reflecting the Business's receipt of these funds and Dugar's failure to explain what happened to the cash.

Dugar timely answered the complaint. He denied the vast majority of the Bjornbaks' allegations, but he did admit that he inadvertently failed to list the 2006 Mini Cooper in his schedules. Dugar explained that he sold the vehicle for scrap in 2019 for $800. He further admitted that he neglected to disclose in his schedules a lawsuit he filed against third party Carlos Dorado.

C.    **The motion to deem facts admitted and related proceedings.**

In June 2021, the Bjornbaks served on Dugar their first set of requests for admission ("RFAs"). Dugar timely emailed unsigned responses to the RFAs. In December 2021, the Bjornbaks filed and served a motion to deem

admitted the facts set forth in the RFAs. According to the Bjornbaks, Dugar failed to properly respond to the RFAs because he did not include a signed verification.

Dugar opposed the motion. He submitted with his opposition a new version of his responses to the RFAs, which included a signed verification. Dugar asserted that he acted in good faith and that the Bjornbaks were not prejudiced by the delay in submitting his responses with a signed verification. He further maintained that his conduct was neither unreasonable nor willful and malicious, and the law favored adjudication of the contested facts rather than deeming them admitted.

In January 2022, the bankruptcy court entered an order to show cause why the bankruptcy court should not excuse Dugar from the deemed admissions ("OSC"). After both parties responded to the OSC, the bankruptcy court entered a memorandum decision and an order denying the Bjornbaks' motion and permitting Dugar to withdraw and amend his deemed admissions. The court noted that the Bjornbaks incorrectly contended that the responses to their RFAs needed to be accompanied by a written and signed verification. As the court explained, Civil Rule 36(a) merely required that the RFA responses be signed. On the other hand, the court acknowledged that Dugar had failed to sign the original version of his RFA responses or to mail them to the Bjornbak, though he did email the responses to them. The court further observed that the Bjornbaks' RFAs failed to advise Dugar of the potential consequences if he failed to timely or

5

properly respond.

The court determined that withdrawal or amendment of the deemed admissions would not prejudice the Bjornbaks' substantive presentation of their claims and would facilitate trying the case on its merits. The court also remarked that the parties' conduct with respect to the RFAs and the responses favored withdrawal of the deemed admissions. Consequently, it permitted Dugar to withdraw and amend the deemed admissions.

**D.    The Bjornbaks' summary judgment motion.**

While the parties disputed the request for admissions discussed above, the Bjornbaks moved for summary judgment. They contended that Dugar conspired with Jacob Sherif, Moshe Ben Nissan, Hadas Pinto, Yaar Kimhu, and Grant Kahn to use the Businesses to hide cash and other assets from the government and creditors.

Dugar admitted his ownership and control of Finest Home Remodeling ("FHR"), which he identified as the successor to his sole proprietorship American Top Remodeling ("ATR").[5] Notwithstanding Dugar's denial that he owned or controlled any of the other Businesses, the Bjornbaks argued that he orchestrated the transfer of assets, operations, and business opportunities to the other Businesses over the course of several years. They argued that he did so because he was experiencing

___

[5] There is a good deal of confusion in the record regarding a corporation formed by Ben Nissan known as ATR Inc. and Dugar's sole proprietorship ATR. But any such confusion is irrelevant to our analysis and resolution of this appeal, given the bankruptcy court's findings after trial.

significant legal troubles that exposed him to an increasing risk of liability.

The Bjornbaks claimed that at the time of his bankruptcy filing, Dugar had undisclosed interests in most or all the Businesses. The Bjornbaks insisted that Dugar's ownership and control was "obvious" because many of them listed the same Ventura Boulevard address, employed the same employee (David Neiyer),[6] were engaged in the same industry (contracting), and were putatively owned and controlled by Dugar's friends and business associates. The Bjornbaks did not dispute that FHR was the successor to ATR and that FHR ceased operations no later than 2016—several years before Dugar filed bankruptcy. Yet based on the premise that he owned and controlled all the Businesses and that the other Businesses succeeded to FHR's assets, operations, and business opportunities, the Bjornbaks believed that Dugar should have produced business and financial records for all the Businesses. They further asserted that Dugar should have produced personal and Business income tax returns for the several years preceding his bankruptcy.

In support of their claim that Dugar owned and controlled all the Businesses, the Bjornbaks presented certified copies of several official corporate filings for California Preferred Builders, Inc. ("CPB"), formed in 2009, which in 2015 became Image Home Design, Inc. ("IHD"). These

---

[6] City of Los Angeles tax records presented by the Bjornbaks indicate that Neiyer worked as a Certified Public Accountant for a company known as Creative Solutions (not one of the Businesses) but made various tax filings and payments with the city on behalf of the Businesses.

filings identified Jacob Sherif as a director of both Businesses, as well as the chief executive officer, chief financial officer, and secretary. On various bank signature cards, Sherif was listed as treasurer and secretary of these two Businesses. Dugar admitted that for a time he served as "RMO" for CPB, which Dugar variously identified as "responsible managing officer" or "responsible managing operator" and that he was paid a fee of $500 for serving in this capacity. However, aside from FHR, CPB, and IHD, there were no similar official corporate records suggesting Dugar's ownership and control of any of the other Businesses.[7]

In addition to the alleged shuttling of assets and income between the Businesses, the Bjornbaks pointed to evidence of several undisclosed vehicles Dugar acquired between 2014 and 2019. According to the Bjornbaks, Dugar concealed and fraudulently transferred these vehicles, and wrongfully failed to disclose them in his schedules. They also maintained that his in-law, Bobby Joe Davis, paid spousal support to Dugar's ex-wife Cindy Dugar, but Dugar failed to disclose this financial arrangement in his schedules.

---

[7] Dugar later testified at trial that he ceased serving as the RMO for CPB in 2013, he formally "disassociated" himself from CPB at that time, and he never had any role in IHD. Even though several official corporate documents after 2013 identified Dugar as a director, Dugar insisted he never served as a director for either Business. He further admitted that some of these documents listed him as a shareholder, but he alternately testified that he never actually received any stock or that his purported equity interest had no value and that it was given to him solely because California law required RMOs to hold stock in the company for which they served as RMOs. According to Dugar, his purported equity interest served no other purpose and gave him no voting rights.

As for false oaths, the Bjornbaks pointed to the following representations and omissions:

- He claimed in his bankruptcy petition that he resided in the same office building where his Businesses were located;

- He told the chapter 7 trustee under oath that he was homeless;

- He stated in his schedules that he paid rent of $500 per month;

- He falsely scheduled that he only possessed $5.00 in cash;

- He omitted from his schedules horses, computers, and vehicles he owned;

- He omitted from his schedules his interest in the Businesses;

- He failed to disclose that he was a shareholder, director, and responsible managing operator in CPB and IHD, businesses putatively owned and controlled by Jacob Sherif; and

- He lied under oath that during his bankruptcy, he drove a Ford vehicle that burned up in a fire.

Finally, the Bjornbaks maintained that Dugar failed to account for all revenue the Businesses received between 2013 and 2018.

In his summary judgment opposition, Dugar told a much different story. According to Dugar, FHR failed after he suffered a series of heart attacks in 2014 and 2015, and he thereafter lost his contractor's license. Though he admitted that Moshe Ben Nissan and Jacob Sherif were friends and business associates, he denied that they were business partners.

Concerning the Bjornbaks' claims of collusion and the use of the Businesses to hide cash and assets by transferring them back and forth, he maintained that this so-called corporate shell game scheme was a figment of the Bjornbaks' imagination. He denied moving millions of dollars from FHR into other Businesses. And he denied that he ever had any genuine ownership or control of any Businesses other than FHR and its predecessor ATR. He further stated that any funds FHR transferred to other Businesses were for "valid consideration." He explained that the Bjornbaks' analysis and accounting of the Businesses' finances—based on bank records and city tax records they obtained by subpoena—betrayed a lack of knowledge and understanding that revenues in general contracting businesses are largely offset by expenses.

Dugar also denied that he intentionally misrepresented or omitted anything from his schedules. He stated that his failure to list his sale of a 2006 Mini Cooper for $800 was inadvertent. He also claimed as inadvertent his failure to disclose his lawsuit against Carlos Dorado. According to Dugar, he had no financial stake in the outcome of that lawsuit. Rather, he brought it to help recover funds that Dorado had defrauded from a construction bonding company. He also denied transferring any cash or other assets to his relatives.

Dugar additionally denied that he owned any horses or financial assets beyond the $5.00 he listed in his schedules. He further denied that he was a beneficiary of any family trust. According to Dugar, he lived solely

10

off social security and food stamps after his health problems led to the failure of FHR and the loss of his contracting license.

**E.      The bankruptcy court's summary judgment ruling.**

The bankruptcy court denied the Bjornbaks' summary judgment motion. The court considered the evidence that the Bjornbaks submitted regarding ownership and control of the Businesses and cash transfers between them. After considering the legal standards for summary judgment and for denial of discharge under § 727(a)(2), (a)(3), (a)(4), and (a)(5), it held that the Bjornbaks had failed to establish the absence of genuine issues of material fact as to any of their claims for relief.

The court highlighted Dugar's serious health problems in 2014 and 2015, which eventually led to the loss of his contractor's license in June 2016. It also noted Dugar's contentions that in 2017, 2018, 2019, and 2020, his only sources of income were Social Security and other government assistance. The court accepted these facts as true for summary judgment purposes. They largely undermined the Bjornbaks' claims that Dugar failed to report income and Business activities and failed to maintain adequate records.

As to the claims under § 727(a)(2) and § 727(a)(4), which require evidence of fraudulent intent, the court ruled that the Bjornbaks had failed to establish for summary judgment purposes that Dugar harbored the requisite intent as to any omission or transfer. Moreover, most of the alleged concealment or transfers challenged by the Bjornbaks were beyond

11

the temporal scope of § 727(a)(2)(A) or (B), and many involved property in which neither Dugar nor his bankruptcy estate ever had any established interest.

## F.    Trial and Judgment.

The bankruptcy court held a one-day trial in November 2022. Qiang Bjornbak and Dugar were the only witnesses who testified. Bjornbak's testimony mirrored what she already had said in her summary judgment papers and was almost entirely derived from what she learned from documents she obtained from public records searches and over 100 subpoenas served on banks and others concerning the finances of Dugar and the Businesses.

For his part, Dugar testified he suffered heart attacks followed by heart surgeries in 2014 and 2015. As a result, he neglected his contracting business. This led to his loss of his contracting license and dissolution of FHR in 2016. He testified that since that time he had been indigent and did not receive any funds from any of the Businesses. He explained that any inconsistency in his schedules or other bankruptcy papers regarding where he lived was a function of his transient lifestyle—living for a time in his car, then in homeless shelters, and finally (postpetition) in a rental property with the financial assistance of "Section 8" housing benefits.

After trial, the parties submitted closing briefs.[8] On March 15, 2023,

---

[8] The Bjornbaks' complaint that the court should not have considered Dugar's post-trial document as a closing brief because he called it a motion to dismiss is without

the bankruptcy court entered a memorandum decision and a judgment in favor of Dugar.

The Bjornbaks timely appealed on March 21, 2023.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court abuse its discretion when it granted Dugar relief from his deemed admissions when he initially failed to properly respond to the Bjornbaks' RFAs?

2.  Is the bankruptcy court's order denying the Bjornbaks' summary judgment motion properly before us for review?

3.  Did the bankruptcy court err when it found after trial that the Bjornbaks failed to establish that they were entitled to relief under § 727(a)(2), (3), (4) and (5)?

4.  Did the bankruptcy court deny the Bjornbaks due process of law by ruling in favor of Dugar?

## STANDARDS OF REVIEW

The bankruptcy court's granting of relief from deemed admissions is reviewed for an abuse of discretion. *Sonoda v. Cabrera*, 255 F.3d 1035, 1039

---

merit. *See generally Keys v. 701 Mariposa Project, LLC (In re 701 Mariposa Project, LLC)*, 514 B.R. 10, 15 n.3 (9th Cir. BAP 2014) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)(federal courts are obliged to liberally interpret pro se filings)).

(9th Cir. 2001). The bankruptcy court abuses its discretion when it applies an incorrect legal rule or when its factual findings are illogical, implausible, or not supported by the record. *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

"When there is a question as to our jurisdiction, we are entitled to raise that issue sua sponte and address it de novo." *Giesbrecht v. Fitzgerald (In re Giesbrecht)*, 429 B.R. 682, 687 (9th Cir. BAP 2010) (cleaned up). We also review de novo due process issues. *Miller v. Cardinale (In re DeVille)*, 280 B.R. 483, 492 (9th Cir. BAP 2002), *aff'd*, 361 F.3d 539 (9th Cir. 2004). When we review a matter de novo, we give no deference to the bankruptcy court's decision. *See Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

The bankruptcy court's factual findings after trial are reviewed under the clearly erroneous standard and only will be reversed if they are, "illogical, implausible, or without support in the record." *Retz v. Sampson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

### A. Relief from deemed admissions.

The Bjornbaks first attack the bankruptcy court's decision to grant Dugar relief from his deemed admissions under Civil Rule 36(a)(3). This rule, made applicable in adversary proceedings by Rule 7036, states: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written

14

answer or objection addressed to the matter and signed by the party or its attorney." In turn, Civil Rule 36(b) provides in relevant part that:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Under Civil Rule 36(b), the court may grant relief from matters deemed admitted under Civil Rule 36(a)(3) when "(1) the presentation of the merits of the action will be subserved, and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (cleaned up). The first part of this test is met when the admissions would effectively preclude trial on the merits. *Id.* at 622. Under part two, the party relying on the deemed admission must prove prejudice. *Id.* Prejudice in this context is more than the inconvenience of having to present evidence at trial and persuade the trier of fact as to the truth of the party's allegations. *Id.* Instead, prejudice for purposes of Civil Rule 36(b) focuses on any difficulties the adverse party might face in marshalling and presenting evidence to support its positions as a direct result of the sudden withdrawal of the deemed admissions. *Id.* The trial court also may take into account other factors, including the cause of any delay, the good faith of

15

the party seeking relief, the relative strength of that parties' positions on the merits, and whether the failure of the party seeking relief to properly or timely respond to the request for admission was the result of inadvertence or a more culpable state of mind. *Id.* at 625; *Arias v. Robinson*, 2022 WL 36915, at *4 (D. Nev. Jan. 4, 2022).

The Bjornbaks have failed to demonstrate an abuse of discretion or reversible error in the decision to grant Dugar relief from the deemed admissions. The bankruptcy court explained in detail how the deemed admissions would prevent Dugar from presenting facts central to his defense. It also considered the respective conduct of the parties regarding the RFAs, noting that the Bjornbaks never advised Dugar of the effect of a failure to timely or properly respond to the RFAs and never requested that he simply sign them. When the issue was raised Dugar promptly submitted a new, signed version of his RFA responses.

Nor did the Bjornbaks demonstrate any prejudice. First and foremost, Dugar did respond to the requests although he emailed them to the Bjornbaks and did not sign them. Similarly, they complain that Dugar never served on them his opposition to their motion to deem facts admitted. On this record, these were technical violations, which did not prejudice or adversely affect the Bjornbaks. Dugar promptly provided signed responses after the Bjornbaks first raised the issue in their motion to deem facts admitted. Similarly, they were made aware of Dugar's opposition and substance of his arguments from the OSC entered by the

16

court. The Bjornbaks do not dispute that they received the OSC and were able to fully present their arguments against granting relief from the deemed admissions. At most, these circumstances suggest harmless error. We must ignore harmless error. *See Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 355 (9th Cir. BAP 2012). Moreover, no trial date had been set. The Bjornbaks were afforded ample time to take discovery and had done so. And to the extent that Dugar modified his RFA responses, the court was clear that it would provide the Bjornbaks with an opportunity to further depose Dugar if they desired to do so.

Incredibly, the Bjornbaks respond that Dugar would not have been prejudiced by the deemed admissions. Yet, at the same time they sought to deny Dugar trial on disputed questions of fact based on the deemed admissions. That is the quintessence of prejudice in this context—denial of a meaningful opportunity to challenge the opposing party's factual contentions. *See, e.g., Sonoda*, 255 F.3d at 1040 ("Regarding prejudice, the district court found that because the motion was made pre-trial Sonoda **would not be hindered in presenting his evidence to the factfinder**." (emphasis added)).

In sum, the bankruptcy court did not err in relieving Dugar from the deemed admissions based on his initial failure to sign and mail his RFA responses to the Bjornbaks.

**B. The bankruptcy court's denial of the Bjornbaks' summary judgment motion is not properly before us for review.**

Summary judgment is appropriate when there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Civil Rule 56 (made applicable in adversary proceedings by Rule 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). For summary judgment purposes, an issue is considered genuine and will bar entry of summary judgment if a reasonable factfinder could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). Moreover, all facts genuinely in dispute must be viewed "in the light most favorable to the non-moving party," *Scott v. Harris*, 550 U.S. 372, 380 (2007), and all reasonable inferences that can be drawn in the non-moving party's favor must be so drawn, *id.* at 378.

Ordinarily, adverse interlocutory rulings such as the denial of summary judgment merge into the final judgment and may be appealed after the final judgment is entered. *See In re Giesbrecht*, 429 B.R. at 688. However, there is an exception to this general rule. *York v. United States (In re York)*, 78 F.4th 1074, 1084 (9th Cir. 2023) (citing *Dupree v. Younger*, 598 U.S. 729, 734-35 (2023)). When summary judgment is denied on "sufficiency-of-the-evidence grounds" and trial occurs, the subsequent final judgment after trial renders the prior summary judgment ruling unreviewable because it has been "overcome by later developments in the

litigation." *Dupree*, 598 U.S. at 734; *see also In re York*, 78 F.4th at 1084 (citing *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011)).

This is precisely the situation here. The Bjornbaks argue that based on the evidence they presented in their summary judgment motion, the bankruptcy court should have granted them summary judgment as to each of their claims for relief. But the subsequent trial on the merits effectively superseded the summary judgment proceedings. Under *Dupree, Ortiz*, and *York* we lack jurisdiction to review the denial of the Bjornbaks' summary judgment ruling.[9]

## C.    Trial.

### 1.    Section 727(a)(2).

Under § 727(a)(2), the bankruptcy court must deny the debtor a discharge when "the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."

To prevail on their § 727(a)(2) claim, the Bjornbaks needed to prove: "(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor

---

[9] Were we to consider the merits of the bankruptcy court's summary judgment ruling, we would affirm that ruling largely for the same reasons we affirm the bankruptcy court's decision at trial, noting that the court was bound to draw all reasonable inferences in favor of Dugar on summary judgment.

19

through the act [of] disposing of the property." *In re Retz*, 606 F.3d at 1200 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)). In addition, the Bjornbaks needed to show that Dugar disposed of "property of the debtor" within a year before the bankruptcy was filed. § 727(a)(2)(A); *In re Lawson*, 122 F.3d at 1240. Alternatively, the Bjornbaks could have shown that Dugar disposed of "property of the estate, after the date of the filing of the petition." § 727(a)(2)(B); *see also In re Retz*, 606 F.3d at 1203 ("§ 727(a)(2)(B) specifically governs transfers of property belonging to the estate.").

The Bjornbaks apparently concede that many of the alleged property dispositions they originally complained of fall outside the temporal limits of § 727(a)(2). *See* Aplt. Opn. Brf. at 25:15-16; *see also In re Lawson*, at 1240 (stating that conduct or state of mind occurring more than one year before the bankruptcy "will be forgiven" under § 727(a)(2)). Therefore, the Bjornbaks now focus on a limited number of dispositions.

First, they address the 2006 Mini Cooper, which Dugar sold in 2019 for $800. The court accepted that this was an asset disposition incorrectly omitted from Dugar's bankruptcy papers. But the bankruptcy court credited Dugar's testimony that the omission was inadvertent rather than intentional and fraudulent. The Bjornbaks claim it is "not plausible" that Dugar simply forgot to disclose the Mini Cooper sale. They believe his denial or failure to state whether he had any other vehicles, bonds, or mutual funds, publicly traded stocks, non-publicly traded stocks, or

20

interests in businesses demonstrates a general culpable intent. But the bankruptcy court credited Dugar's trial testimony. Its finding was not illogical, implausible, or without support in the record, and the Bjornbaks' disagreement with the court is not error.

Next, the Bjornbaks claim that Dugar transferred or concealed the following assets within one year of his bankruptcy: two parcels of Washington real property; six horses; several motor vehicles; cash in CPB's bank account; cash in another Business's bank account (AHI); and his ownership of several Businesses: "CPB, IHD, IMD, CBG, AHI, Green NGR, APAC." But the bankruptcy court found that the Bjornbaks had failed to present sufficient evidence to demonstrate Dugar's ownership of these items. The Bjornbaks have again offered nothing but their disagreement with the court's finding. They have failed to establish that these findings were illogical, implausible, or without support in the record.[10]

### 2. Section 727(a)(3).

Under § 727(a)(3), the bankruptcy court must deny the debtor a discharge when "the debtor has concealed, destroyed, mutilated, falsified,

---

[10] The Bjornbaks additionally argue that the bankruptcy court's intent finding with respect to Dugar's alleged transfer or concealment of these items was clearly erroneous. These intent findings are largely irrelevant, because the Bjornbaks failed to prove with respect to almost all these items that Dugar transferred or concealed any property he owned prepetition. As to the Mini Cooper and the Dorado lawsuit, the Bjornbaks have not established that the bankruptcy court clearly erred when it found that Dugar's failure to disclose these items in his initial bankruptcy filings was inadvertent rather than intentional.

or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" "The statute does not require absolute completeness in making or keeping records. Rather, the debtor 'must present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.'" *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008) (quoting *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)).

A prima facie case under § 727(a)(3) requires the plaintiff to prove that: (1) the debtor failed to "maintain and preserve" sufficient records; and (2) the inadequacy of kept records prevented interested parties from learning about debtor's current financial condition or his material business affairs for a "reasonable period" before the bankruptcy filing. *Id.* If the plaintiff presents a prima facie case, then the burden shifts to the debtor to show that under all the surrounding circumstances, his or her failure to keep adequate records was justified. *Id.* at 761-63; *Nevett v. U.S. Tr. (In re Nevett)*, 2021 WL 2769799, at *7 (9th Cir. BAP July 1, 2021).

The bankruptcy court held that the Bjornbaks failed to present sufficient evidence to satisfy either element of their prima facie case. The Bjornbaks argue that this was error because Dugar produced virtually no

22

documents in response to their requests for production. According to them, this paucity of production demonstrates a patent inadequacy of records. In their own words: "Appellee's companies are making millions of dollars each year. It is not possible that Appellee did not file tax returns for insufficient income." Aplt Opn Br. at 29:16-17. But this argument assumes that Dugar owned and controlled the Businesses (other than FHR). The bankruptcy court specifically found that the Bjornbaks presented insufficient evidence to establish his ownership and control of the Businesses other than FHR.

The Bjornbaks further assail Dugar for neither providing the full contact information of his accountant nor personally reaching out to his accountant to obtain additional documents that the Bjornbaks requested. But again they assume the accountant had, or should have had, critical information necessary to enable interested parties to assess his **current** financial condition (as of the time of the bankruptcy filing) and to assess his **material** business transactions for a reasonable period of time before the bankruptcy filing. The court credited Dugar's testimony about the severe deterioration of his health in 2014 and 2015, which included multiple heart attacks and heart surgeries. As a result, his contracting business failed. Dugar completely ceased operating and dissolved FHR, his sole corporate construction business, by no later than 2016. And again, there was insufficient evidence that Dugar should have had records of the Businesses the Bjornbaks wanted.

The Bjornbaks' § 727(a)(3) claim hinges on Dugar's failure to produce: (1) tax returns he never prepared or filed (because he had insufficient income ); (2) business records for Businesses he neither owned nor controlled; and (3) business records for FHR, which failed at least four years before Dugar's bankruptcy. On the evidence presented, we cannot say that the bankruptcy court clearly erred when it found that the Bjornbaks had failed to prove either prong of their prima facie case under § 727(a)(3).

3. **Section 727(a)(4).**

In relevant part, § 727(a)(4)(A) requires the bankruptcy court to deny the debtor a discharge when the debtor "knowingly and fraudulently" makes a false oath "in or in connection with" the bankruptcy. To prevail on their § 727(a)(4) claim, the Bjornbaks needed to prove that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Retz*, 606 F.3d at 1197 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005)). "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *Id.* at 1196 (quoting *Khalil v. Devs. Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd & adopted*, 578 F.3d 1167, 1168 (9th Cir. 2009)). However, "[a] discharge cannot be denied when items are omitted from the schedules by honest mistake." *In re Khalil*, 379 B.R. at 175 (cleaned up).

24

Here, the bankruptcy court acknowledged that Dugar's schedules and statement of financial affairs contained several misstatements and omissions. These included:

- The failure to list his 2019 sale of the 2006 Mini Cooper; and

- The failure to list his lawsuit against Carlos Dorado.

In addition, the court acknowledged four omitted creditors. One of these omitted creditors was the California Contractor's State Licensing Board ("CSLB"). The other three omitted creditors were complaining customers, whose complaints resulted in a 2018 CSLB Registrar of Contractors decision determining that Dugar owed them, in aggregate, more than $200,000, plus over $30,000 owed to the CSLB for costs of investigation and enforcement.

Dugar admitted at trial that he never paid anything to either the CSLB or these customers, and he did not list any of them in his schedules as creditors. But Dugar testified that at the time he filed his bankruptcy, he did not believe he was obliged to pay any of these amounts because of subsequent favorable settlements with the customers, or because of the running of the statute of limitations, or because he viewed the CSLB's order as conditional—subject to his intent or desire to reinstate his contractor's license, which he had no desire or intent to do.

The court also noted that there was at least some evidence that perhaps could have supported a determination that Dugar should have but failed to report either an ownership interest, management role, or

25

directorial position in CPB and IHD, though the court elsewhere found that the only corporation Dugar owned was FHR.

The bankruptcy court specifically found credible Dugar's explanations for each of these omissions. The court also found that some of his omissions were inadvertent (like with the Mini Cooper and the Dorado lawsuit), and it found that others were based on his honest and subjective belief that there was nothing that required disclosure, like with the CSLB order and his involvement with CPB and IHD. Based on these findings, the court ultimately found that when Dugar signed his petition, schedules, and statement of financial affairs, he believed them to be true and correct. This, in turn led the court to hold that § 727(a)(4) did not support denying Dugar his discharge.

The Bjornbaks again disagree with the bankruptcy court's findings and urge this Panel to adopt their view of the evidence to conclude that Dugar's omissions were intentional. But they fail to explain why the bankruptcy court's inferences drawn from the evidence were illogical, implausible, or without support in the record. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

The Bjornbaks next reference a host of additional assets, corporate interests, and corporate management roles that they insist Dugar owned or held. These include horses, motor vehicles, real estate, and the Businesses.

26

But the bankruptcy court found, based on Dugar's testimony, that he did not own or hold any of these alleged assets or interests at the time of his bankruptcy filing. The Bjornbaks further complain that Dugar's schedules failed to **deny** that he had any "cars, or vans, collectibles of values [sic], sports equipment, firearms, jewelry, farm animals, other personal or household items" at the time he filed his petition. But Dugar testified at trial that he did not have any of these types of assets on the date he filed his bankruptcy petition. Nothing in the Bjornbaks' briefing explains why the bankruptcy court's findings regarding these assets and interests were clearly erroneous. Again, we cannot say that the bankruptcy court's findings were illogical, implausible, or without support in the record.

4.      **Section 727(a)(5).**

Under § 727(a)(5), the bankruptcy court must deny the debtor a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." As the Ninth Circuit has explained, a claim under § 727(a)(5) requires the plaintiff to prove:

> (1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.

*In re Retz*, 606 F.3d at 1205 (quoting *Olympic Coast Inv., Inc. v. Wright (In re Wright)*, 364 B.R. 51, 79 (Bankr. D. Mont. 2007)). If the plaintiff makes a prima facie case by establishing these elements, then the debtor must come forward with admissible evidence explaining the disposition of the "missing" assets. *Id.* "Whether a debtor has satisfactorily explained a loss of assets is a question of fact for the bankruptcy court, overturned only for clear error."[11] *Id.*

Here, the bankruptcy court focused almost exclusively on the assets Dugar derived from FHR. The court relied on the same facts that supported its § 727(a)(3) analysis, specifically the multiple heart attacks and heart surgeries in 2014 and 2015, the loss of his contractor's license, and the failure of his business by 2016. The court similarly credited Dugar's testimony that he thereafter did not work and earned no income in 2017, 2018, and 2019. The court ultimately found that these facts satisfactorily explained why Dugar had little or no assets at the time of his bankruptcy filing. The record supports the bankruptcy court's findings.

The Bjornbaks, in contrast, focus on the Businesses other than FHR and the assets Dugar supposedly derived from them. They additionally focus on the same assets they claim Dugar owned as discussed above in

---

[11] Under § 727(a)(5), even a less than proper disposition of assets can be (if the bankruptcy court so finds) an "adequate" explanation for purposes of § 727(a)(5), so long as it explains their absence from the estate. *See Kane v. Chu (In re Chu)*, 511 B.R. 681, 687 (Bankr. D. Haw. 2014). The appropriateness of such disposition may be addressed in another paragraph of § 727(a) or elsewhere in the Code.

our § 727(a)(4) analysis—including horses, motor vehicles, and real estate. The Bjornbaks failed to establish Dugar's ownership of these assets. The alleged ownership of these assets thus did not support the Bjornbaks' § 727(a)(4) argument and similarly cannot support their § 727(a)(5) claim. At bottom, there is no basis to conclude that the bankruptcy court's § 727(a)(5) findings were clearly erroneous.

## D. Due Process.

The Bjornbaks claim that the bankruptcy court denied them due process of law. To support their due process claim, the Bjornbaks must demonstrate: (1) the bankruptcy court denied them a full and fair opportunity to be heard; and (2) prejudice. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950*); Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776-77 (9th Cir. 2008), *partially abrogated on other grounds as recognized by Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956, 962 (9th Cir. 2021).

The Bjornbaks attempt to establish both impairment of their opportunity to be heard and prejudice based on the following allegations:

- the court several times excused Dugar's failure to meet court ordered deadlines and also excused his noncompliance with Local Bankruptcy Rules;

- the court did not require Dugar to produce his tax returns;

- the court granted Dugar relief from his deemed admissions;

29

- the court declined to require Dugar to disclose his residential address to the Bjornbaks;

- the court demonstrated racial bias by repeatedly crediting Dugar's testimony over Ms. Bjornbak's and ignoring her testimony;

- the court ignored the Bjornbaks' evidence regarding the 2018 CSLB order because it did not recall during trial that this same evidence had been presented in the summary judgment proceedings;

- the court directed Dugar to add himself as a witness after the Bjornbaks stated that they would not be calling him as a witness; and

- the court treated Dugar's post-trial motion to dismiss as a closing brief.

None of these points are sufficient to support the Bjornbaks' due process claim. Most of them reflect a preference to allow a pro se debtor the opportunity to defend his discharge on the merits rather than deny his discharge for procedural defects. This is not evidence of bias, nor is it evidence of a denial of due process. Violation of court orders and local rules ordinarily do not support dispositive sanctions without a much more egregious showing of noncompliance. *See Lee v. Roessler–Lobert (In re Roessler–Lobert)*, 567 B.R. 560, 572-73 (9th Cir. BAP 2017). Furthermore, the trial court enjoys broad discretion in deciding when and how to enforce its local rules, especially when as here there is no indication of prejudice to the opposing party. *U.S. v. Hempfling*, 431 F. Supp. 2d 1069, 1087 (E.D. Cal. 2006); *see also United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979)

("Only in rare cases will we question the exercise of discretion in connection with the application of local rules.").

As for the tax returns, the bankruptcy court found that Dugar had filed no recent tax returns because he had insufficient income. The record supports that finding.

As for disclosure of his residential address, the Bjornbaks' assertions that this information was critical to their claims rings hollow. In spite of their extensive third-party discovery efforts, they failed on multiple grounds to establish virtually all of the elements necessary to support their objection to discharge claims.

The Bjornbaks' complaint that the bankruptcy court credited Dugar's testimony over their evidence and supposedly ignored some of their evidence is similarly unfounded. We have explained above why the court's weighing of the evidence was not clearly erroneous. Adverse rulings typically will not support a claim of bias. *See Jiminez v. ARCPE 1, LLP (In re Jimenez)*, 2021 WL 5193284, at *2 (9th Cir. BAP Nov. 4, 2021).

Finally, the Bjornbaks contend that the bankruptcy court's failure to immediately recollect at trial the summary judgment evidence regarding the 2018 CSLB order somehow denied them due process. This argument is frivolous. The record demonstrates that the Bjornbaks presented the evidence and the court considered it. That the court ruled against them is not a denial of due process.

31

## CONCLUSION

For the reasons set forth above, we AFFIRM.